[No. A069127. First Dist., Div. One. June 19, 1996.]

BRAD NEWSHAM et al., Plaintiffs and Appellants, v.
BOARD OF PERMIT APPEALS et al., Defendants and Respondents;
YOSSEDEK DESTA, Real Party in Interest and Respondent;
JOSEPH BARSSE et al., Interveners and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III.B and III.C.

**COUNSEL**

Elizabeth E. Bader for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Burk E. Delventhal and Thomas J. Owen, Deputy City Attorneys, for Defendants and Respondents

No appearance for Real Party in Interest and Respondent.

Goldfarb & Lipman and Richard A. Judd for Interveners and Respondents.

OPINION

DOSSEE, J.—Brad Newsham, United Taxicab Workers, Michael K. Sealey, Cab Driver Association of San Francisco, and Bob Westermeyer (collectively, appellants) appeal from the trial court's judgment denying their petition for a writ of mandate to prevent the Board of Permit Appeals and the Police Commission of the City and County of San Francisco (respectively, the Board and the Police Commission) from issuing 50 new taxicab permits. Appellants contend that the trial court should have granted their petition because the municipal code ordinance that authorized the Board to overrule the Police Commission's decision to deny additional permits conflicts with both an initiative ordinance and the city charter.[1] We affirm.

## I. THE PERTINENT REGULATORY FRAMEWORK

In the June 1978 primary election, the San Francisco electorate adopted Proposition K, entitled "Ordinance Providing for the Regulation of Taxicabs and Other Motor Vehicles for Hire."[2] Proposition K provides that "[t]he Police Commission shall issue a sufficient number of permits to assure adequate taxicab service throughout the City and County of San Francisco." (Prop. K, § 1, subd. (d).)

Under Proposition K, an applicant for a taxicab permit must apply to the Police Commission for its declaration of "public convenience and necessity." (Prop. K, § 2, subd. (a).) At the hearing on the application, "the burden of proof shall be upon the applicant to establish by clear and convincing evidence which shall satisfy the Police Commission, that public convenience and necessity require the operation of the vehicle or vehicles for which permit application has been made, and that such application in all other respects should be granted." (Ibid.) Proposition K further provides that "[t]he Police Commission, in determining whether or not public convenience and necessity exist for the issuance of a permit, may consider such facts as it deems pertinent, but must consider whether: [¶] (a) The applicant is financially responsible and will maintain proper financial records. [¶] (b) The public will not be adequately or properly served unless the application is granted. [¶] (c) The applicant has complied with all provisions of the Municipal Code, including pertinent motor vehicle laws. [¶] (d) The applicant will be a full-time driver, within the meaning of . . . this Ordinance, of the taxicab or other motor vehicle for hire." (Prop. K, § 3, subds. (a)-(d).)

---

[1] Appellants raise two additional contentions, which we reject in the unpublished portion of this opinion.

[2] The provisions of Proposition K are codified as appendix F to the Charter of the City and County of San Francisco.

Between 1979 and 1993, the San Francisco electorate defeated four initiatives seeking to amend or repeal the provisions of Proposition K. In December 1988, shortly after the defeat of the third such initiative, the board of supervisors enacted an ordinance entitled "Regulations for Motor Vehicles for Hire." One of the provisions of the ordinance, section 1079 of the San Francisco Police Code (section 1079), provides a time frame, a consolidation procedure, and an appellate mechanism for the public convenience and necessity hearings contemplated by Proposition K.

Subdivision (d) of section 1079 provides that, subject to the provisions of subdivision (e), "hearings on applications for declaration of public convenience and necessity shall be held at least once each calendar year for each type, kind or class of permit for which one or more applications are pending." Subdivision (e) of section 1079, entitled "Consolidation of Hearings Permitted," provides that "[t]he Police Commission may consolidate for hearing and determination of public convenience and necessity all applications for a given type, kind or class of permit. Any declaration of public convenience and necessity made by the Police Commission pursuant to such a consolidated hearing shall be valid and binding as to the total number of permits authorized for a particular type, kind or class of permit and as to each application included for hearing in said consolidated hearing and shall have continuing force and effect until the next subsequent Police Commission hearing on public convenience and necessity as to that particular type, kind or class of permit. Any applicant whose application is called for hearing at a consolidated hearing may rely upon the testimony and evidence adduced before the Police Commission by other pending convenience and necessity [*sic*], in the sole discretion and judgment of the individual applicant; provided, however, that the burden of proof in establishing public convenience and necessity shall remain on each applicant." Under subdivision (f) of section 1079, "[a] declaration of public convenience and necessity made at or as a result of a consolidated hearing . . . may be appealed to the Board of Permit Appeals as set forth in Section 3.651 of the Charter of the City and County of San Francisco."[3]

Following the consolidated hearing described in subdivision (e) of section 1079, ". . . every applicant for a permit to operate a motor vehicle for hire

---

[3]Section 3.651 of the Charter of the City and County of San Francisco provides, in pertinent part, as follows: "Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any department, or any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may

shall have a separate hearing to review and determine the applicant's individual eligibility and compliance with all applicable laws, rules and regulations before a permit is issued . . . . The Police Department shall investigate each applicant and shall report to the Police Commission on the results of said investigation at the time of the hearing on the applicant's individual qualifications. If public convenience and necessity is declared for the issuance of a permit and an applicant is found to be eligible thereofor [sic] after consideration by the Police Commission of the factors set forth in Section 1081 of this Article,[4] the Police Commission shall so notify the applicant. Within 60 days thereafter the applicant shall furnish to the Police Commission any and all additional information which may be required. If the Police Commission then finds that the applicant, in addition to complying with all other requirements, is the owner of the vehicle or vehicles for which a permit is sought, and that each such vehicle meets with all applicable statutes, ordinances, rules and regulations, it shall thereupon issue the permit." (§ 1079, subd. (g).) The findings made at the hearings on individual eligibility are also appealable to the Board. (*Ibid.*)

## II. FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 1992, at a consolidated annual hearing, the Police Commission appointed a hearing officer to conduct a fact-finding hearing on the issue of public convenience and necessity. At the time of the hearing, there were 811 authorized taxicab permits in San Francisco and 987 outstanding applications for permits. At the conclusion of the factfinding hearing, which was held over the course of several days, the hearing officer found that the applicants had failed to meet their burden of establishing that public convenience and necessity required the issuance of additional taxicab permits. Accordingly, the hearing officer recommended that the Police Commission deny the applicants' request for the issuance of additional permits. At a public hearing on May 5, 1993, the Police Commission adopted the hearing officer's recommendation.

On June 2, 1993, one of the applicants for a taxicab permit, Yossedek Desta (Desta), appealed the Police Commission's decision to the Board. On September 22, 1993, after hearing additional oral testimony, the Board voted to overrule the Police Commission's decision and to issue 189 additional

---

overrule the action of such department and order that the permit or license be granted, restored or refused."

[4]Section 1081 of the San Francisco Police Code requires the Police Commission to consider the factors set forth in section 3, subdivisions (a), (c), and (d), of Proposition K (see, *ante,* at p. 932) in determining individual eligibility.

permits.[5] The San Francisco Police Department subsequently requested that the Board grant a rehearing on the ground that the Board had not reviewed the finding of the Police Commission's hearing officer or the materials submitted to him. On October 20, 1993, the Board granted the request for rehearing. Following a rehearing on December 8, 1993, and after hearing additional oral testimony, the Board again voted to overrule the Police Commission's decision but reduced the number of additional taxicab permits from 189 to 50. On January 12, 1994, the Board adopted a written decision in which it concluded that Desta had "met his burden of establishing by clear and convincing evidence that the public convenience and necessity requires the issuance of 50 additional taxicab permits by December 31, 1994."

On February 28, 1994, appellants filed a petition for a writ of mandate in the trial court seeking to prevent the Board and the Police Commission from issuing the 50 additional taxicab permits. On May 13, 1994, the trial court granted Joseph Barsse, Cab Drivers for Fifty More Cabs, and George Fanourgiakis (collectively, Barsse) leave to intervene in the action. The trial court denied appellants' petition for a writ of mandate in a written decision dated October 31, 1994, and later entered judgment in favor of the Board and the Police Commission. Appellants have filed a timely notice of appeal.[6]

## III. Discussion

### A. *Challenges to Section 1079*

Appellants argue that section 1079 is void because it conflicts with the provisions of Proposition K. (See *Rossi* v. *Brown* (1995) 9 Cal.4th 688, 714-715 [38 Cal.Rptr.2d 363, 889 P.2d 557] [initiative measure may be amended or repealed only by the electorate].) Appellants' argument, which

---

[5]The issuance of 189 additional taxicab permits would have brought the total number of authorized permits to 1,000, the same number proposed in Proposition Y, an initiative slated for the then upcoming November 2, 1993, election. Proposition Y was ultimately defeated at the polls.

[6]In his respondent's brief, Barsse contends that we should dismiss this appeal as moot. In support of this contention, Barsse requests that we take judicial notice of the Police Commission's May 1995 decision to continue with 861 taxicab permits, the 811 permits outstanding at the time of the Police Commission's May 1993 decision plus the 50 additional permits that the Board ordered the Police Commission to issue. Barsse claims that the 1995 decision supplants the decision at issue here.

We deny Barsse's request for judicial notice and decline to dismiss the appeal as moot. The Police Commission's 1995 decision demonstrates nothing more than that the Police Commission complied with the Board's order to issue 50 additional permits, something that it was legally required to do. The decision does not demonstrate that the Police Commission somehow ratified or approved of the Board's order. Indeed, in correspondence with appellants' counsel, the city attorney has conceded that the issuance of the 50 additional permits does not render this appeal moot or preclude relief.

is somewhat convoluted, proceeds as follows: "[T]he [board of] supervisors enacted an ordinance which effectively took the power over the issuance of taxicab permits away from the Police Commission *sub silentio*. [¶] This was done by adding section 1079 to the Police Code. Section 1079 provided that any decision by the Police Commission *not* to issue additional taxicab permits would have to be made at a new annual 'consolidated' form of hearing, in which the issue would be decided as a consolidated or class action. This 'consolidated' class action decision would then be appealable to the Board of Permit Appeals. There had never been any such provision in the ordinances prior to [Proposition K]. There was no such provision in the ten year period which spanned from the time [Proposition K] was enacted until just prior to the supervisors' 1988 ordinance." (Italics in original.)

The premise underlying appellants' argument—that section 1079 *requires* the Police Commission to utilize a consolidated hearing procedure—is simply mistaken. The pertinent subdivision of section 1079 is entitled "Consolidation of Hearings *Permitted*" and provides that "[t]he Police Commission *may* consolidate for hearing and determination of public convenience and necessity all applications for a given type, kind or class of permit." (§ 1079, subd. (e), *ante*, p. 933, italics added.) In other words, the Police Commission has the *discretion* to utilize a consolidated hearing procedure. It is not required to do so.

As a practical matter, consolidation often makes eminent sense. One of the key factors in the public convenience and necessity determination, whether "[t]he public will not be adequately or properly served unless the application is granted" (Prop. K, § 3, subd. (b), *ante*, p. 932), is usually best evaluated with reference to the applicant pool as a whole. It is senseless to require the Police Commission to rule on the question of individual eligibility for literally hundreds of permit applicants when all or most of the outstanding applications are likely to be denied on the basis of the public service factor alone. Appellants concede as much in their opening brief, where they note that "[a]t the level of the Police Commission, appellants have no specific objection to consolidating the hearings for individuals on the subject of whether new taxicabs are needed, when to do so is useful and efficient."

Appellants' real objection seems to be to the appellate review conducted by the Board. According to appellants, the language of Proposition K, its legislative history, and the legislative history of the attempts to amend or repeal it, all demonstrate that the electorate intended the Police Commission, not the Board, to have the final say as to whether the taxicab fleet should be expanded. (See, e.g., Prop. K, § 2, subd. (a), *ante*, p. 932 [applicant must "satisfy the Police Commission" on the issue of public convenience and necessity].) We cannot agree.

Proposition K is simply silent on the issue of Board review. We decline appellants' invitation to construe this silence as evidence that the electorate did not intend such review to take place. As an initiative ordinance, Proposition K cannot contravene the provisions of the Charter of the City and County of San Francisco. (*Harman* v. *City and County of San Francisco* (1972) 7 Cal.3d 150, 161 [101 Cal.Rptr. 880, 496 P.2d 1248]; *Stuart* v. *Civil Service Com.* (1985) 174 Cal.App.3d 201, 206 [219 Cal.Rptr. 770].) Section 3.651 of the city charter expressly instills the Board with appellate jurisdiction over decisions to grant or deny permits. (See, *ante*, fn. 3.) Section 1079 fills a gap in Proposition K by requiring the Police Commission to hold hearings on applications for declarations of public convenience and necessity at least once each calendar year. (§ 1079, subd. (d), *ante*, p. 933.) By requiring the Police Commission to act within a specific time frame and by making its rulings final for purposes of appellate review, section 1079 ensures that applicants for taxicab permits are not indefinitely deprived of their appellate rights under section 3.651 of the city charter.

Throughout their briefing, appellants attempt to characterize the Police Commission's decision at the consolidated public convenience and necessity hearing as a "preliminary regulatory finding" and the appeal therefrom as "an impermissible interlocutory appeal." Appellants claim that the Police Commission's decision is not final because even if the Police Commission decides not to expand the taxicab fleet, applicants receive permits "all the time" when existing permits are surrendered.[7] The record does not bear out this claim. As the Police Commission's hearing officer observed in his written decision, the number of recycled permits "has not been large." For example, during the five-year period between 1988 and 1992, an average of only twenty-two permits were recycled each year. At this rate, absent an expansion of the taxicab fleet, it would take over 44 years for all of the 987 outstanding permit applicants to receive permits. For the vast majority of permit applicants then, the Police Commission's decision not to expand the taxicab fleet is, for all practical purposes, the denial of a permit.

Appellants also contend that section 1079 conflicts with section 3.651 of the Charter of the City and County of San Francisco by allowing "class action litigation on the propriety of regulatory decisions within City government." Appellants' characterization of the Board's role is mistaken. If the Police Commission elects to follow the consolidated hearing procedure set

---

[7]Prior to the enactment of Proposition K, taxicab permits were transferrable and were exchanged between private parties for consideration. Proposition K compelled all existing permit holders to surrender their permits in exchange for new permits which were "non-transferrable and non-assignable either expressly or by operation of law." (Prop. K, § 4, subd. (b); see generally, *O'Connor* v. *Superior Court* (1979) 90 Cal.App.3d 107, 110-111 [153 Cal.Rptr. 306].)

forth in section 1079, it issues a *single* declaration of public convenience and necessity, which is "valid and binding as to the total number of permits authorized for a particular type, kind or class of permit and as to each application included for hearing in said consolidated hearing." (§ 1079, subd. (e), *ante*, p. 933.) This single declaration is then appealable to the Board. (§ 1079, subd. (f), *ante*, p. 933.) As the trial court correctly observed in its written decision, "[i]n essence, section 1079 treats the decision on public convenience and necessity as one decision ruling on the applications of all those applicants on the waiting list. If the Board disagrees with a decision of the Police Commission finding no need for any additional permits, as it did here, it will normally, if not necessarily, have considered the number of permits for which public convenience and necessity has been established. Any procedure limiting the scope of its decision and requiring multiple . . . appeals would be highly wasteful, inconsistent with the procedure outlined in Police Code section 1079, and should not be adopted unless clearly mandated by the ordinance or the Charter. Since no provision does mandate such an approach—in fact the ordinance provides that the *declaration* of the Police Commission, itself, shall be subject to appeal—the procedure employed here is consistent with both the Charter and the Police Code." (Italics in original.)

In short, since section 1079 is consistent with both Proposition K and section 3.651 of the Charter of the City and County of San Francisco, the consolidated hearing procedure used in this case was valid.

B., C.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV.  DISPOSITION

The judgment is affirmed, with costs to the Police Commission, the Board, and Barsse.

Strankman, P. J., and Stein, J., concurred.

A petition for a rehearing was denied July 17, 1996, and appellants' petition for review by the Supreme Court was denied September 18, 1996.

---

*See footnote, *ante*, page 930.